## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **CEDRIC CAMERON CLARK** | * | |
| *Petitioner* | * | |
|  | * | |
| v. | * | Criminal Case No.: RWT 07cr281 |
|  | * | Civil Case No.: RWT 10cv640 |
|  | * | |
| **UNITED STATES OF AMERICA** | * | |
| *Respondent* | * | |
|  | * | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Petitioner Cedric Cameron Clark's petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. In it, Petitioner contends that he was denied his Sixth Amendment right to effective assistance of counsel. Petitioner contends that because "the government's weight of evidence was overwhelming," his Counsel provided him with ineffective assistance of trial by not convincing him to plead guilty. ECF No. 54-1 ¶ 22. Because Petitioner has failed to show that Counsel's representation was objectively unreasonable and/or resulted in actual prejudice, the Court will deny Petitioner's § 2255 petition.

### I.

On March 2, 2007, Officer Schnitzenbaumer of the Prince George's Police Department saw a green Infiniti traveling eastbound on Riverdale Road in Riverdale, Maryland. The Officer pulled alongside of the green Infiniti and made eye contact with the driver. The Officer noticed that the driver was a black male with longer braided hair and that the driver was not wearing a seatbelt. Officer Schnitzenbaumer then pulled behind the Infiniti and checked its registration which revealed no record of the Infiniti. The driver of the Infiniti then began speeding through a residential area, at which point, the Officer attempted to pull the driver over. The green Infiniti

did not stop and a police chase entailed. During the chase, the driver attempted to make an illegal U-turn, crashed into another vehicle, and did not stop at the scene of the accident. Finally after driving though a front yard, a side yard and embankment, the green Infiniti came to a stop in a drainage ditch.

Officer Schnitzenbaumer stopped his vehicle and saw four black males swing open the doors of the green Infiniti and run in different directions. Officer Schnitzenbaumer noticed that the driver was wearing a black t-shirt and blue jeans.

After other officers arrived on the scene, Officer Schnitzenbaumer approached the green Infiniti and saw a large black handgun on the floorboard of the driver's compartment. The black handgun was a fully loaded Glock with an extended magazine and thirty-one rounds of ammunition, including one in the chamber.

Eventually, an individual was apprehended hiding in the nearby woods. The individual was muddy, wet and wearing the same black t-shirt and blue jeans as the driver of the green Infiniti. Officer Schnitzenbaumer identified the individual as the driver of the green Infiniti based on the eye contact he had with the driver prior to the pursuit, as well as, his observations of the driver's clothing and physical characteristics as he abandoned the green Infiniti. The driver was arrested and identified as Cedric Cameron Clark.

On June 25, 2007, a grand jury returned a one-count indictment charging Cedric Cameron Clark with possessing a firearm after a felony conviction in violation of 18 U.S.C. § 922(g)(1). The Defendant, Mr. Clark, pleaded not guilty and proceeded to trial, which commenced on October 23, 2007.

At trial, ATF Special Agent Gorell introduced photographs showing the recovered firearm in an identical green Infiniti. The pictures depict Agent Gorrell trying to hide the firearm

in the front panel, front seat and armrest/console, in the rear seat pockets, under the front seats and under the dash.  Because of the firearm's large size, it could not be completely hidden.  The pictures also depict Agent Gorell trying to slide the firearm underneath the rear seat floorboard and the driver's seat floorboard, but the firearm did not fit because of the heater and structure of the seat.

The Defendant, Mr. Clark, testified at trial and confirmed that he was with his brother and two friends on the night of March 2, 2007 and all of them were in his brother's Infiniti.  He confirmed the chase and the fact that everyone abandoned the green Infiniti.  Mr. Clark confirmed he was wearing a black t-shirt and blue jeans, as well as, a jacket, which fell off as he abandoned the Infiniti.  He also confirmed that he had a felony conviction.  The Defendant denied he was the driver of the green Infiniti and claimed he was in the passenger seat smoking marijuana.  The Defendant also testified that he was unaware of the firearm found in the green Infiniti.

On October 25, 2007, the jury returned a guilty verdict.  The Court sentenced the Defendant, Mr. Clark, to 108 month of imprisonment on January 24, 2008.  On February 9, 2009, the Fourth Circuit affirmed in an unpublished per curium opinion in which it rejected Defendant's arguments that the evidence was insufficient to sustain the jury verdict and that the Court had erred in denying Defendant's motion for a new jury pool.  *See United States v. Clark*, 310 Fed. App'x 615 (4th Cir. 2009).

On March 3, 2010, the Mr. Clark filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence.  The matter is fully briefed and ready for adjudication.

## II.

In evaluating claims of ineffective assistance of counsel, the Court applies the two prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

First, Petitioner must show that counsel's representation fell "below an objective standard of reasonableness." *Id.* at 688. In situations where the defendant is alleging that counsel's performance was ineffective because it caused the defendant to reject a plea, the Fourth Circuit has held that the professional norms surrounding plea negotiations require defense counsel to do the following: 1) notify the client of a plea offer; 2) advise the client of the option to proceed to trial; 3) present the client with the probable outcomes of both the guilt and sentencing phases of each alternative; and 4) permit the client to make the ultimate decision. *Jones v. Murray*, 947 F.2d 1106, 1110-11 (4th Cir.1991). In reviewing counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. There is a presumption that counsel's actions are strategic trial decisions. *Id*. The court is thus highly deferential to counsel's decisions and reviews the challenged conduct in light of the totality of circumstances. *Id*. at 689-90.

Under the second prong of the *Strickland* test, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," where a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In situations where the defendant challenges the effectiveness of counsel's advice in relation to plea negotiations, the defendant must demonstrate that but for counsel's errors, he would not have gone to trial and would have instead accepted the plea. *See  Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

**III.**

The Court finds that that Counsel's representation of Mr. Clark, the Petitioner, did not fall "below an objective standard of reasonableness." Petitioner was given three plea offers and concedes that Counsel's representation conformed to many of the professional norms governing plea agreements. Specifically, Counsel notified Petitioner of the Government's three plea offers, advised Petitioner of the option to proceed to trial, and permitted the client to make the ultimate decision. *See* ECF No. 54-1 ¶¶ 12-23.

Petitioner contends that Counsel's representation fell below well-accepted norms because Counsel failed to present him with the probable outcomes of both the guilt and sentencing phases of each alternative in light of the overall strength of the government's case. *See e.g., Jones,* 947 F.2d at 1111. This argument is without merit.

First, during the initial plea negotiations, Petitioner Clark states that his Counsel failed to present probable outcome of proceeding to trial because his Counsel knew "that potentially there was one officer who may identify Clark at any trial" and failed to advise him that the Government possessed "more than minimal evidence" against him. ECF No. 54-1 ¶ 15. Petitioner did not need Counsel to inform him "that potentially there was one officer who may identify Clark at any trial," ECF No. 54-1 ¶ 13, because Petitioner testified that a long police chase ensued, at the conclusion of which, Petitioner got out of his car and ran into the woods. Petitioner's belief that Counsel should have aggressively persuaded him to accept the plea offer given the strength of the Government's case would have violated the well-accepted rule that the client must make the decision of whether to accept a plea or proceed to trial. *Jones*, 957 F.2d at 1111.

Moreover, during the subsequent plea offer, Petitioner's own submissions make clear that he was aware of his sentencing exposure and the evidence against him. Petitioner Clark recognized that he had two choices "either accept the plea offer and receive a lesser guideline range" or "go to trial…and face a maximum sentence of ten years." Petitioner's contention is not that he was unaware of his sentencing exposure but rather that Counsel failed to "la[y] out in appropriately stark terms" that exposure. *See* ECF No. 54-1 ¶ 18. Because Counsel presented Petitioner Clark with the probable outcomes of both accepting a plea and proceeding to trial, Counsel did not act unreasonably during the second plea negotiation.

Finally, any argument that Counsel was deficient for failing to advise Petitioner Clark that he could plead guilty to the indictment the day before trial and receive a three-level reduction for acceptance of responsibility, *see* ECF 54-1 ¶¶ 21-23, is entirely without force. This is because Petitioner Clark would not have received a third point for acceptance of responsibility if he had pled guilty the day before or day of trial. Under U.S.S.G. § 3E1.1(b), the Court may grant an additional one-level decrease under that section only upon motion of the government where the defendant has "assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial . . ." The Government would not have made such a motion if Petitioner had pled guilty the day before trial or on the day of trial because the Government still had to prepare for that trial.

## VI.

Even assuming that Petitioner is correct and Counsel's advice was "below an objective standard of reasonableness," Petitioner cannot show prejudice.

Petitioner Clark states that had his Counsel's advice been different, he would have taken one of the three plea offers. However, this statement is contradicted by the evidence. Petitioner Clark was aware of the evidence against him, specifically the photos government planned to introduce from similar vehicle, Officer Schnitzenbaumer's identification of Mr. Clark, and the fact that the government had no eyewitnesses who could testify they saw Mr. Clark in possession of the firearm. Moreover at trial, Petitioner Clark continued to maintain his innocence and ultimately took the stand in his own defense. Given the Defendant's knowledge of the evidence against him and the Defendant's maintenance of his innocence, the Court is reluctant to find that Mr. Clark's post-hoc self-serving representations are sufficient to show prejudice. *See Fields v. United States*, 956 F.2d 1290, 1297-98, n.19 (4th Cir. 1992) (noting "[n]othing in the record establishes that Fields would have consummated the earlier plea agreements . . . only Field's post hoc 'bald assertion' exists to prove that he would have accepted the arraignment plea offers"); *see also United States v. Merritt*, 102 Fed. App'x. 303, 308, 2004 WL 1418432 (4th Cir. 2004) (unpublished) (rejecting defendant's claim of ineffective assistance; finding it unnecessary to resolve type of evidence required to show prejudice).

Accordingly, it is, this 25th day of January, 2012, by the United States District Court for the District of Maryland,

**ORDERED**, that Petitioner's Motion to Vacate Under 28 U.S.C. § 2255 (ECF No. 54) is **DENIED**.

/s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE